THOMAS S. BROWN, CA Bar No. 178620
    tsbrown@foley.com
JUDITH A. WALTZ, CA Bar No. 103180
    jwaltz@foley.com
**FOLEY & LARDNER LLP**
555 CALIFORNIA ST STE 1700
SAN FRANCISCO, CA 94104
TELEPHONE: 415.434.4484
FACSIMILE:  415.434.4507

LORI A. RUBIN,  (*admitted Pro Hac Vice*)
    larubin@foley.com
**FOLEY & LARDNER LLP**
WASHINGTON HARBOUR
3000 K STREET, N.W.
SUITE 600
WASHINGTON, DC 20007-5109
TELEPHONE:  202.672.5300
FACSIMILE:   202.672.5399

*Attorneys for Defendant Vibrant America,
LLC*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ex rel. STF, LLC, an organization; STATE OF CALIFORNIA ex rel. STF, LLC, an organization,<br><br>                   Plaintiff,<br><br>vs.<br><br>VIBRANT AMERICA, LLC, a Delaware Limited Liability Company,<br><br>                   Defendant. | Case No. 3:l6-cv-02487-JCS<br><br>DEFENDANT VIBRANT AMERICA LLC'S MOTION TO DISMISS RELATOR'S COMPLAINT<br><br>**Supporting Documents**<br>1. Notice of Motion<br>2. Memorandum of Points and Authorities<br>3. Request for Judicial Notice<br>4. [Proposed] Order<br><br>Date:   July 24, 2020<br>Time:  9:30 AM<br>Courtroom: F<br>Before the Honorable Joseph C. Spero<br><br>Relator's Complaint Filed: May 9, 2016<br>Relator's Complaint Served: March 16, 2020<br>Response Date: May 18, 2020 |

# TABLE OF CONTENTS

I.      INTRODUCTION ...................................................................................................... 1

II.     ISSUES TO BE DECIDED (LOCAL RULE 7-4) ..................................................... 1

III.    RELATOR'S ALLEGATIONS .................................................................................. 2

IV.     LEGAL STANDARDS ............................................................................................. 2

V.      DISCUSSION ........................................................................................................... 4

        A.      RELATOR'S FCA CLAIMS ARE PREMISED ON DEFICIENT THEORIES OF
                AKS LIABILITY ............................................................................................. 4

                1.      Payments To Phlebotomists Are Not Bribes. .................................... 4

                2.      Caps On Patient Copayments And Deductibles Are Not Bribes. ..... 7

        B.      RELATOR FAILS TO PLEAD AN FCA VIOLATION WITH RULE 9(B)
                PARTICULARITY ........................................................................................... 8

                1.      Phlebotomist Payment Amount Theory Not Pled With
                        Particularity. ................................................................................... 10

                2.      Copayment And Deductible Cap Theory Not Pled With
                        Particularity. ................................................................................... 13

                3.      No "Reliable Indicia" Of False Claims Submission. ...................... 16

        C.      FCA COUNTS DO NOT MEET MATERIALITY PLEADING
                REQUIREMENTS ......................................................................................... 16

        D.      FCA COUNTS DO NOT MEET AKS OR FCA SCIENTER PLEADING
                REQUIREMENTS ......................................................................................... 17

        E.      CALIFORNIA FCA COUNT IS ALSO DEFICIENT. ................................. 19

        F.      IFPA CLAIM MUST BE DISMISSED ........................................................ 19

                1.      Relator Lacks Standing To Bring An Insurance Fraud Claim. ....... 20

                2.      Relator Fails To State A Claim Under IFPA. .................................. 21

        G.      THIS IS THE EXACT TYPE OF CASE THAT SHOULD BE DISMISSED
                UNDER RULE 9(B). ..................................................................................... 21

        H.      THE COMPLAINT SHOULD BE DISMISSED WITH PREJUDICE. ....... 23

VI.     CONCLUSION ....................................................................................................... 24

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*United States ex rel. Aflatooni v. Kitsap Physicians Serv.*,
  314 F.3d 995 (9th Cir. 2002) ..................................................................6, 9, 10, 14

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)...........................................................................................3, 18

*Armstrong-Young v. Carelink Hospice Servs., Inc.*,
  No. 15-cv-04095-WHO, 5352018 WL 4773111 (N.D. Cal. Oct. 1, 2018) ...........9

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 550 (2007)................................................................................................3

*Bly-Magee v. California*,
  236 F.3d 1014 (9th Cir. 2001) .............................................................11, 22, 23

*Bryan v. United States*,
  524 U.S. 184 (1998)..............................................................................................17

*Cafasso v. Gen. Dynamics C4 Sys., Inc.*,
  637 F.3d 1047 (9th Cir. 2011) ....................................................................4, 9, 23

*United States ex rel. Cericola v. Federal Nat. Mortg. Assoc.*,
  529 F.Supp 2d 1139 (C.D. Cal. 2007)..................................................................22

*Cty. of Santa Clara v. Astra USA, Inc.*,
  401 F.Supp.2d 1022 (N.D.Cal.2005).....................................................................5

*United States ex rel. Dan Abrams Co. LLC, v. Medtronic Inc.*,
  No. LA CV15-01212 .....................................................................................11, 14

*Daniels–Hall v. Nat,l Educ. Ass'n*,
  629 F.3d 992 (9th Cir.2010) ..................................................................................5

*United States ex rel. Durkin v. Cty. of San Diego*,
  300 F. Supp. 3d 1107 (S.D. Cal. Jan. 11, 2018) ............................................17, 18

*United States ex rel. Escobar v. Universal Health Servs. Inc.*,
  136 S. Ct. 1989......................................................................................................16

*United States ex rel. Frazier v. Iasis Healthcare Corp.*,
  812 F.Supp 2.d 1008 (D. Ariz. 2011) ..........................................................8, 9, 13, 16

*United States ex. rel. Gough v. Eastwestproto Inc.*,
  No. CV 14-465 DMG, 2018 WL 6929332 (C.D. Cal. Oct. 24, 2018).............12, 13

*United States ex rel. Grubbs v. Kanneganti*,
   565 F.3d 180 (5th Cir.2009) ................................................................10

*Head v. Wilkie*,
   936 F.3d 1007 (9th Cir. 2019) ............................................................20

*Headwaters Inc. v. U.S. Forest Serv.*,
   399 F.3d 1047 (9th Cir. 2005) ............................................................22

*Hunter Lab., LLC et al. v. Quest Diagnostics Inc. et al.*,
   No. 1:13-cv-01129 (E.D. Va. Sep. 9, 2013) ......................................22

*State ex rel. Hunter Labs., LLC v. Quest Diagnostics Inc.*,
   No. 1:13-cv-01838-SCJ, 2014 WL 12543888 (N.D. Ga. Mar. 14, 2014) .........................13

*United States ex rel. Karp v. Ahaddian*,
   No. CV 16-500 PSG, 2018 WL 6333670 (C.D. Cal. Aug. 3, 2018)....................16

*Kearns v. Ford Motor Co.*,
   567 F.3d 1120 (9th Cir. 2009) ..........................................................9, 22

*Klaczak v. Consol. Med. Transp.*,
   458 F.Supp.2d 622 (N.D. Ill. 2006) ..................................................17

*Knudsen v. Sprint Commc'ns Co.*,
   No. C13-04476 CRB, 2016 WL 4548924 (N.D. Cal. Sept. 1, 2016) ...............9, 16, 17, 19

*United States ex rel. Krawitt v. Infosys Tech. Ltd., Inc.*,
   372 F. Supp. 3d 1078 (N.D. Cal. March 12, 2019)..............................18

*United States ex rel. Lutz v. Lab. Corp. of Am. Holdings*,
   No. 9:14-cv-3699-RMG, 2019 WL 236799 (D.S.C. Jan. 16, 2019)..............20, 21

*Maa v. Ostroff*,
   No. 12-cv-00200–JCS, 2013 WL 5755043 (N.D. Cal. Oct. 23, 2013)..............23

*Maa v. Ostroff*,
   No. 12-cv-00200-JCS, 2013 WL 1703377 (N.D. Cal. Apr. 19, 2013) ............9, 13, 21

*Maya v. Centex Corp.*,
   658 F.3d 1060 (9th Cir. 2011) ............................................................20

*Musgrave v. ICC/Marie Callender's Gourmet Prods. Div.*,
   2015 WL 510919 (N.D. Cal. Feb 5, 2015) ..........................................5

*Pension Plan for Pension Tr. Fund for Operating Engineers v. Weldway Const., Inc.*, 920
   F. Supp. 2d 1034 (N.D. Cal. 2013) ..................................................23

*Periguerra v. Meridas Capital, Inc.*,
   No. C 09-4748 SBA, 2010 WL 395932 (N.D. Cal. Feb. 1, 2010) ...............22

*United States ex rel. Puhl v. Terumo BCT,*
  No. CV 17-8446 PSG, 2019 WL 6954317 (C.D. Cal. Sept. 12, 2019) ............................................15

*United States ex rel. Regan v. Carolina Liquid Chemistries, Corp.,*
  No. 13-cv-01497-JST, 2019 WL 3207851 (N.D. Cal. July 16, 2019)...........................................9, 14

*Riedel v. Bluewave Healthcare Consultants Inc.,*
  No. 9:15-cv-02485 (D.S.C. June 19, 2015) ............................................................................................22

*Riedel v. Bos. Heart Diagnostics Corp.,*
  No. 1:13-cv-01423 (D.D.C. August 28, 2012) ......................................................................................22

*Semegen v. Weidner,*
  780 F.2d 727 (9th Cir. 1985) ..................................................................................................................23

*In re Stac Elecs. Sec. Litig.,*
  89 F.3d 1399 (9th Cir. 1996) ..................................................................................................................22

*State ex. rel., et al. v. Lab Corp. of America,*
  No. 1:13-cv-01838 (N.D. Ga. May 31, 2013).................................................................................6, 22

*Turner v. City and County of San Francisco,*
  788 F.3d 1206 (9th Cir. 2015) ..................................................................................................................3

*Ebeid ex rel. U.S. v. Lungwitz,*
  616 F.3d 993 (9th Cir. 2010) ............................................................................................4, 9, 10, 16, 22

*United States v. Chang,*
  No. 13-cv-3772-DMG, 2017 WL 10544289 (C.D. Cal. July 25, 2017)...............10, 13, 14, 15, 17, 21

*United States v. Safran Grp.,*
  No. 15-CV-00746-LHK, 2017 WL 235197 (N.D. Cal. Jan. 19, 2017) ............................................19

*United States v. Somnia, Inc.,*
  339 F. Supp. 3d 947 (E.D. Cal. Sep. 7, 2018)....................................................................................19

*Van Buskirk v. Cable News Network, Inc.,*
  284 F.3d 977 (9th Cir. 2002) ....................................................................................................................5

*Vess v. Ciba-Giegy Corp., USA,*
  317 F.3d 1097 (9th Cir. 2003) ........................................................................................................4, 11, 21

**California Cases**

*Associated Boat Indus. of N. Cal. v. Marshall,*
  230 P.2d 379 (Cal. Ct. App. 1951) ........................................................................................................20

*People ex rel. Gov't Emps. Ins. Co. v. Cruz,*
  244 Cal.App.4th 1184 (2016) ..................................................................................................................19

*State ex rel. Standard Elevator Co. v. W. Bay Builders, Inc.*,
    197 Cal. App. 4th 963 (2011) ...................................................................19

*State v. Altus Fin., S.A.*,
    36 Cal. 4th 1284 (2005) ...........................................................................19

*Torres v. City of Yorba Linda*,
    13 Cal. App. 4th 1035 (1993) ..................................................................20

**Federal Statutes**

31 U.S.C. § 3729 *et seq.* (False Claims Act) ................................................ *passim*

31 U.S.C. § 3730(b)(1) ....................................................................................20

42 U.S.C. § 1320a-7b(b) (Anti-Kickback Statute) ........................................ *passim*

**California Statutes**

Cal. Gov't Code § 12651(a)(1)-(2) (California False Claims Act)......................3

Cal. Ins. Code § 1871 (California Insurance Frauds Prevention Act) ...............20

Cal. Ins. Code § 1871.7(a)-(b) ....................................................................3, 19

Cal. Penal Code § 550..................................................................................19

**Regulations**

59 Fed Reg. 65,372 (Dec. 19, 1994) ...........................................................7, 8

**Federal Rules**

Fed. R. Civ. P. 8(a) ....................................................................................3, 4

Fed. R. Civ. P. 9(b) ................................................................................. *passim*

Fed. R. Civ. P. 12(b)(6).........................................................................1, 3, 20

## NOTICE OF MOTION AND MOTION TO DISMISS

TO THIS HONORABLE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD: PLEASE TAKE NOTICE THAT on July 24, 2020 in Courtroom F on the 15th Floor of the United States District Court for the Northern District of California, located at 450 Golden Gate Avenue, San Francisco, California, Defendant Vibrant America, LLC ("Vibrant") will and hereby does move to dismiss Relator-Plaintiff STF LLC's Complaint in its entirety with prejudice pursuant to Federal Rules of Civil Procedure 12(b)(6).

## STATEMENT OF RELIEF REQUESTED (LOCAL RULE 7-2)

Vibrant respectfully requests that the Court issue an order dismissing the Complaint in this action and all claims asserted therein with prejudice, for the reasons set forth in the accompanying Memorandum of Points and Authorities, the accompanying Request for Judicial Notice, any reply memorandum, the pleadings and files in this action, and such other matters as may be presented at or before the hearing.

## MEMORANDUM AND POINTS AND AUTHORITIES

### I.    INTRODUCTION

Relator's Complaint (Dkt. 1) fails to plead any violation of the False Claims Act ("FCA"), California False Claims Act ("CFCA"), or California Insurance Frauds Prevention Act ("IFPA"). First, Relator's two primary theories of liability describe lawful business practices, not "kickbacks," as Relator alleges. Second, the Complaint alleges baseless, unsupported conclusions rather than pleading fraud with the particularity required under Federal Rule of Civil Procedure 9(b). Moreover, Relator fails to meet standards for pleading materiality and scienter. Relator's CFCA and IFPA claims fail for the same reasons as the federal claims. Additionally, the IFPA causes of action fail because Relator lacks standing to sue under the IFPA. Finally, this case apparently has been brought not by an insider privy to any of the baseless allegations, but by a serial relator seeking to take advantage of *qui tam* provisions. This is the exact type of opportunistic, meritless, and harmful filing that is supposed to be barred by Rule 9(b). This case has been pending for almost four years, and it has been declined by the United States and the State of California (Dkts. 30, 33). The Complaint should be dismissed in full and with prejudice.

### II.    ISSUES TO BE DECIDED (LOCAL RULE 7-4)

(1)    Does the Complaint sufficiently plead conduct that violates the Anti-Kickback Statute?

(2)     Does the Complaint plead fraud with particularity as required under Rule 9(b) with respect to each cause of action asserted therein?

(3)     Does the Complaint sufficiently plead materiality?

(4)     Does the Complaint sufficiently plead scienter?

(5)     Does Relator have standing to assert claims under the California Insurance Frauds Prevention Act?

(6)     Should the Complaint be dismissed with prejudice for failure to state a claim upon which relief can be granted?

## III.    RELATOR'S ALLEGATIONS

Vibrant is a clinical laboratory located in San Carlos, California.  Compl. ¶ 11.  Vibrant offers diagnostic blood testing.  Compl. ¶¶ 3, 46, Ex. B.  Relator is a limited liability company registered in an unknown location, seemingly established as a shell company for the purpose of filing this *qui tam* action. The Complaint discloses little to nothing about Relator other than its name, STF LLC, and that its "members are involved in the healthcare industry."  Compl. ¶ 10.  To Vibrant's knowledge, Relator has no tenable connection to Vibrant.

On May 9, 2016, Relator filed its *qui tam* lawsuit under seal alleging Vibrant violated the FCA, CFCA, and IFPA, based on two concocted "kickback" schemes allegedly intended to induce providers to refer federal health care program business to Vibrant.  Compl. ¶ 5.  In the first alleged scheme, Relator claims Vibrant entered into "sham" phlebotomy contracts with physicians' staff members or family members.  Compl. ¶ 2.  According to the Complaint, Vibrant allegedly paid "kickbacks" in the form of above market "draw" fees.  *Id*.  Relator's second scheme alleges Vibrant capped copayments or deductibles at $25 for privately insured patients and did not pursue collections for privately insured patients in an effort to "pull-through" Medicare and Medicaid business from physicians.  Compl. ¶¶ 4-5. Relator purports to bring this action on behalf of the United States and the State of California.  After conducting an investigation into Relator's claims during the almost four-year seal period, the United States and the State of California declined to intervene.  Dkts. 30, 33.

## IV.    LEGAL STANDARDS

The Complaint alleges that Vibrant violated the FCA, CFCA, and IFPA based on the same alleged

conduct.  Relator has failed to state a claim under any statutory provision.  In relevant part, the FCA imposes liability on an entity who "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval" (the "presentment" provision); or who "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim" (the "make or use" provision).  31 U.S.C. § 3729(a)(1)(A)-(B).  The CFCA contains nearly identical "presentment" and "make or use" provisions.  Cal. Gov't Code § 12651(a)(1)-(2).  Relator's first Cause of Action relates to the FCA's "presentment" provision, the second Cause of Action relates to the FCA's "make or use" provision, and the seventh and eighth Causes of Action relate to the parallel CFCA provisions.  Relator's FCA and CFCA Causes of Action rely on adequately pleading a violation of the Anti-Kickback Statute, 42 U.S.C. § 1320a-7b(b) ("AKS").  In relevant part, the AKS imposes liability for "knowingly and willfully" offering or paying remuneration, including a kickback, bribe, or rebate, to induce the referral of an individual to a defendant for the "furnishing or arranging for the furnishing of any item or service" reimbursed by a federal health care program.  42 U.S.C. § 1320a-7b(b)(2)(A).  The Complaint also alleges Vibrant violated the California IFPA (Third through Sixth Causes of Action).  Under the IFPA, liability is created when an individual or entity (1) pays kickbacks; or (2) submits false claims to an insurer.  *See* Cal. Ins. Code § 1871.7(a)-(b).

Relator's Complaint includes nothing more than general recitations of statutes and improbable theories as to all of its claims, and no Cause of Action that can survive this motion to dismiss.  To state a claim under fraud statutes such as the FCA, CFCA, and IFPA, Relator must meet the pleading standards of Rules 8(a) and 9(b).  A motion brought under Rule 12(b)(6) serves to test the sufficiency of a complaint against these pleading standards.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 550, 554-556, 570 (2007).  As to Rule 8(a), "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (internal quotations and citation omitted).  "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Twombly*, 550 U.S. at 545.  "[C]onclusory allegations of law and unwarranted inferences are insufficient to avoid a Rule 12(b)(6) dismissal." *Turner v. City and County of San Francisco*, 788 F.3d 1206, 1210 (9th Cir. 2015) (internal quotations and citations omitted).

Whereas the general pleading standard is "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), Rule 9(b) imposes a heightened pleading standard for fraud allegations; namely, that "a party must state with particularity the circumstances constituting fraud or mistake," Fed. R. Civ. P. 9(b).  As Relator brings claims that all sound in fraud, the Complaint is subject to the heightened pleading standard supplied by Rule 9(b).  *Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054 (9th Cir. 2011) ("The heightened pleading standard of Rule 9(b) governs FCA claims").  Pleading under Rule 9(b) requires a complaint include "the who, what, when, where, and how of the misconduct charged."  *Ebeid ex rel. U.S.  v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010) (quoting *Vess v. Ciba-Geigy Corp., USA*, 317 F.3d 1097, 1106 (9th Cir. 2003)).

## V.    DISCUSSION

### A.    Relator's FCA Claims Are Premised On Deficient Theories Of AKS Liability.

Relator alleges Vibrant made or caused false claims to be submitted to the government in violation of the FCA's "presentment" and "make or use" provisions by means of two unsupported theories that Vibrant violated the AKS.  To maintain its claims, Relator must first plead Vibrant violated the AKS— something Relator cannot plausibly do because the Complaint describes lawful business practices, not kickbacks or bribes.  Relator alleges the $15 fee Vibrant paid its independent contractor phlebotomists and Vibrant's alleged capping of privately insured patients' copayments or deductibles are "kickbacks." Compl. ¶ 5.  Neither practice as alleged in the Complaint describes a kickback.  As such, neither alleged practice supports Relator's claims under the FCA, and the FCA causes of action must be dismissed.

#### 1.    Payments To Phlebotomists Are Not Bribes.

Vibrant operates a single laboratory, but provides specialty laboratory services to patients across several states.  To draw specimens, Vibrant utilizes phlebotomists in the locations of the patients.  Compl. Ex. B (Dkt. 1 at 37).  The specimens are then shipped to the single laboratory for testing.  Compl. ¶ 3. Relator believes $15 is too great a payment for the multitude of tasks each Vibrant phlebotomist performs per patient sample, and Relator premises half its case on this baseless and unsupported position.  Relator relies on the $3 fee that Medicare reimburses for a routine venipuncture (*i.e.,* standard blood draw) (Compl. ¶ 24) to support its claim that $15 is too much, but this reliance ignores that Vibrant's $15 payment is not for a standard blood draw and collection,  but rather for all the following, according to the

exhibits Relator itself attached to the Complaint:

> Apportioning the specimen into multiple vials specific to whole blood, serum and plasma testing requirements; loading, spinning and unloading the vials in a blood centrifuge machine; maintaining specimen integrity by cooling and packaging the vials in specially designed biohazard shipping containers; ensuring proper patient identification on vials and requisition forms; providing accurate and current insurance and billing information; and coordinating shipment pickup.

Compl. Ex. A-B (Dkt. 1 at 32, 34).  Thus, the referenced Medicare fee for a blood draw and collection is not a relevant comparison for the fee Vibrant pays its phlebotomists for the far more involved multitude of services described above.[1]  And, instead, materials attached to the Complaint suggest the $15 fee *was* fair market value ("FMV").  For example, the Phlebotomy Services Agreement attached as Exhibit B contains the provision, "Phlebotomist hereby represents that the amounts charged herein are similar to amounts charged by Phlebotomist to other esoteric laboratories for similar services."  Ex. B at 1 (Dkt. 1 at 34).  As such, $15 was the going, FMV rate.

Relator also relies on a 2005 Advisory Opinion by the Department of Health and Human Services Office of Inspector General (OIG)[2] that considers facts far afield from this case and that does not support Relator's claim that the $15 fee Vibrant paid for phlebotomist services is a kickback.  *See* Compl. ¶¶ 22-23, 25; Request for Judicial Notice ("RJN") Ex. B.  The Advisory Opinion is inapplicable for several reasons.  First, it considered payment for a standard blood draw and collection—not the panoply of the

---

[1] Moreover, whereas Medicare only pays $3 for routine venipuncture (CPT 36415), the average amount billed to Medicare for routine venipuncture was $15 in 2014, and greater than that in subsequent years.  *See* https://www.findacode.com/tools/code-print.php?set=CPT&c=36415 (FindaCode is a subscription based online database for medical billing codes and information).  And, as another point of comparison, Medicare pays laboratories specimen collection fees to collect certain samples for COVID-19 diagnostic testing of $23.46 and $25.46.  *See* https://www.cms.gov/files/document/covid-19-laboratories.pdf (these amounts also take into consideration travel time and cost, for example to patients that are homebound or in a non-covered stay in a skilled nursing facility); *See* Request for Judicial Notice ("RJN"), Ex. A.  *See Daniels–Hall v. Nat,l Educ. Ass'n*, 629 F.3d 992, 999 (9th Cir.2010) (taking judicial notice of information found on government websites); *See also Cty. of Santa Clara v. Astra USA, Inc.,* 401 F.Supp.2d 1022, 1024 (N.D.Cal.2005) (taking judicial notice of information issued in a report by the Department of Health and Human Services and information posted to its website).

[2] This section cites to guidance issued by OIG and the California Department of Public Health.  *See* RJN Ex. B-E.  Because Relator relies heavily on these sources in its Complaint, and because this information is issued by a government agency, it is appropriate to reference these sources here.  *See* V*an Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002) (under the doctrine of "incorporation by reference" it is appropriate for a district court to "consider documents that were referenced extensively in the complaint and were accepted by all parties as authentic."); *see also Musgrave v. ICC/Marie Callender's Gourmet Prods. Div.,* 2015 WL 510919, at *3 (N.D. Cal. Feb 5, 2015) ("Documents available through government agency websites are often considered appropriate for judicial notice as documents in the public record not reasonably subject to dispute.").

services rendered here as described in the above paragraph—and in fact it considered an arrangement where the *lab* itself picked up specimens from physicians' offices (making it clear that the suite of services at issue in the instant case was not at issue in the Advisory Opinion), OIG Advisory Opinion 05-08 at 2. Second, at issue in the Advisory Opinion was payment for blood draw and collection in conjunction with the provision of free blood-drawing supplies to referring physicians, *id.*, unlike here, where different services are at issue and no free blood-drawing supplies were furnished.  Next, the Advisory Opinion related to payment to *physicians*, not to independently contracted phlebotomists as alleged here, a crucial difference because if the benefit does not accrue to physicians, there is no "strong incentive" to physicians to order more blood tests (*i.e.*, no inducement), *id.* at 4.  Further, the Advisory Opinion was concerned with possible impermissible "double dipping" of physicians also billing Medicare for the same services, *id.* at 5, whereas there are no allegations of such in the instant case.  Finally, it reached its conclusion "especially in light of" the lab's representation that the Proposed Arrangement was in reaction to competitors' arrangements to provide such blood draw remuneration, implying the remuneration was not to fairly compensate for blood draws, but rather to induce referrals to that particular lab, *id.* at 4, whereas here, there are no factual allegations from which similar inducement or intent may be adduced.

Similarly, the 2014 OIG Special Fraud Alert relied on by Relator relates to payments to physicians as well, not payments to phlebotomists, and thus is inapplicable here.  *See* RJN Ex. C.  As the California Department of Public Health has recognized, laboratories took to heart the 2014 Special Fraud Alert and, rather than paying physicians, laboratories now contract directly with individuals, who may be members of the physician's office staff, to provide phlebotomy services to the laboratory.  The California Department of Public Health has *not* taken issue with this practice, contrary to Relator's suggestion, *see* Compl. ¶ 28, but rather takes issue with it *in instances when* "the physician reduces the salary or compensation to that individual when such an arrangement is in place" because "the laboratory is conferring a benefit upon the physician by paying a portion of the compensation of the physician's employee."  California Dep't of Public Health Notice Re Non-Compliance Inducements, at 2; *see* RJN Ex. E.  There are no allegations here that any physician reduced the compensation of employees that separately contracted with Vibrant, *see infra* § IV.B.1., and thus Relator has not alleged conduct that runs contrary to the guidance materials Relator cites.

Indeed, the 1994 OIG Special Fraud alert referenced by Relator recognizes that the "mere placement of a laboratory employee in a physician's office would not necessarily serve as an inducement prohibited by the anti-kickback statute." *See* Compl. ¶ 27; OIG Special Fraud Alert Publication, 59 Fed Reg. 65,372, 65,377 (Dec. 19, 1994); RJN Ex. D. Instead, the 1994 OIG Special Fraud Alert takes issue with phlebotomists not employed by the physician's office "perform[ing] additional tasks that are normally the responsibility of the physician's office staff." *Id*. The Complaint is devoid of any factual allegations that Vibrant compensates phlebotomists for performing any office services that benefit the physician. In fact, Vibrant expressly prohibits this practice. Exhibit B to the Complaint is a Phlebotomy Services Agreement which states, "Practice shall ensure that any Collectors provided to Laboratory hereunder do not perform Services for the Practice during the time periods when they are providing Services for Laboratory." Compl. Ex. B (Dkt. 1 at 37). Moreover, the Agreement provides that the phlebotomist or physician practice must notify Vibrant of any activity in violation of this provision. *See id.* (Dkt. 1 at 38) ("the undersigned agrees to inform Laboratory if the [P]ractice requests the undersigned to provide additional services that are to be charged to Laboratory"). Any allegation that Vibrant is operating in a manner inconsistent with the guidance in the 1994 OIG Special Fraud Alert is unsupported and in fact, refuted. All Relator has done is claim—implausibly and without any factual or legal support— that Vibrant has paid its phlebotomists too much, and Relator claims entitlement to an inference of fraud. That is not enough to survive a motion to dismiss.[3]

### 2.   Caps On Patient Copayments And Deductibles Are Not Bribes.

Next, Relator points to alleged caps on copayments or deductibles and Vibrant's alleged "policy" of not pursuing collection of patient bills in an attempt to conjure up an AKS violation. Compl. ¶¶ 45-50. Without supporting factual allegations, Relator claims Vibrant "does not charge patients any amount in excess of $25, regardless of the patient's responsibility" and that Vibrant does "not send any patients to collections." Compl. ¶ 45. Relator turns to language in the 1994 OIG Special Fraud Alert about the routine waiver of Medicare deductibles and copayments, which is inapplicable here, both because Relator's allegations relate to privately insured patients, Compl. ¶¶ 4, 49, and because there are no

---

[3] Similarly, there is nothing fraudulent or unlawful about a lab contracting as a phlebotomist a family member of a physician, and paying that individual the same rates the lab pays its other phlebotomists.

copayments associated with laboratory services under Medicare, *see* Centers for Medicare & Medicaid Servs., Dep't of Health & Human Servs., Medicare Claims Processing Manual, ch. 16 § 30.2 (Jan. 17, 2020); *see* RJN Ex. F.[4]   Moreover, the OIG recognizes there are valid reasons to waive or cap copayments or deductibles.  OIG's position is that waivers of copayments and deductibles for the Federal health care programs are not necessarily problematic, stating that, for example, "providers . . . may forgive the copayment in consideration of a particular patient's financial hardship."  59 Fed. Reg. at 65,375.  Here, Relator fails to plead the financial circumstances of any patient allegedly receiving waived copayments or deductibles.  Relator has not provided sufficient details related to the nature of the waivers to support its claim that this legitimate business practice was "improper."

There are other valid reasons, too, why a laboratory would not seek payment from patients through the collections process.  Hiring a collection company may be more expensive than the remaining balance due on the claim; or the collection process may prove to be burdensome.  In fact, numerous medical providers, including hospitals with costly medical bills, do not threaten patients with collections.  *See* Tara Bannow, *Few Hospitals Aggressively Sue Patients to Pay Bills*, Modern Healthcare (Oct. 5, 2019, 1:00 AM),   https://www.modernhealthcare.com/revenue-cycle/few-hospitals-aggressively-sue-patients-pay-bills.  These practices constitute legitimate business decisions, not the payment of criminal kickbacks.

## B.   Relator Fails To Plead An FCA Violation With Rule 9(b) Particularity.

Setting aside that Relator takes issue with legitimate business practices, Relator's FCA claims fail for a separate reason: Relator *does not plead with particularity* its AKS allegations nor that any false claims were submitted to the government as the result of any purported kickback.  Because Relator's FCA claims are based on alleged AKS violations, Rule 9(b) requires Relator allege the particular details of those AKS "schemes" by pleading every element of the AKS with the particularity required by Rule 9(b). *See United States ex rel. Frazier v. Iasis Healthcare Corp.*, 812 F.Supp 2.d 1008, 1016 (D. Ariz. 2011) (granting motion to dismiss relator's FCA complaint and applying Rule 9(b) to AKS allegations).  Rule 9(b) requires that allegations "state with particularity the circumstances constituting fraud or mistake, including the who, what, when, where, and how of the misconduct charged."  *Kearns v. Ford Motor Co.*,

---

[4] Available at https://www.cms.gov/Regulations-and-Guidance/Guidance/Manuals/Downloads/clm104c16.pdf.

567 F.3d 1120, 1124 (9th Cir. 2009) (affirming dismissal of complaint where fraud was not pled with particularity under Rule 9(b)); *see also United States ex rel. Regan v. Carolina Liquid Chemistries, Corp.*, No. 13-cv-01497-JST, 2019 WL 3207851, *3 (N.D. Cal. July 16, 2019) ("When an entire complaint, or an entire claim within a complaint, is grounded in fraud and its allegations fail to satisfy the heightened pleading requirements of Rule 9(b), a district court may dismiss the complaint or claim.") (quoting *Vess*, 317 F.3d at 1107). Any allegations that fail to provide specifics necessary to plead with the particularity demanded by Rule 9(b) should be dismissed. *Ebeid*, 616 F.3d at 1001 (affirming dismissal of complaint for failure to plead with particularity required under Rule 9(b)); *United States ex rel. Armstrong-Young v. Carelink Hospice Servs., Inc.*, No. 15-cv-04095-WHO, 2018 WL 4773111, at *3-4 (N.D. Cal. Oct. 1, 2018) (dismissing FCA fraud complaint where relator brought "only conclusory allegations" and failed to plead the who, what, when, where, and how); *Knudsen v. Sprint Commc'ns Co.*, No. C13-04476 CRB, 2016 WL 4548924, at *15-16 (N.D. Cal. Sept. 1, 2016) (dismissing complaint because it failed to allege specifics of purported FCA violations with specificity required by Rule 9(b)); *See Maa v. Ostroff*, No. 12-cv-00200-JCS, 2013 WL 1703377 (N.D. Cal. Apr. 19, 2013) (dismissing complaint for failing to meet the particularity requirement of Rule 9(b)).

Moreover, to survive a motion to dismiss a claim that arises under the "presentment" or "make or use" provisions of the FCA, Relator must plead the submission of a false claim. "The FCA attaches liability, not to the underlying fraudulent activity or to the government's wrongful payment, but to the claim for payment." *Cafasso*, 637 F.3d at 1055 (internal quotations and citations omitted) (affirming district court's granting of motion to dismiss); *see also United States ex rel. Aflatooni v. Kitsap Physicians Serv.*, 314 F.3d 995, 1002 (9th Cir. 2002) ("an actual false claim is the *sine qua non* of a False Claims Act violation") (internal quotations and citations omitted). One way to satisfy the burden of pleading the submission of false claims is to identify examples of false claims submitted. *Frazier*, 812 F.Supp 2.d, at 1015 (granting motion to dismiss FCA claims) ("The use of representative examples is simply one means of meeting the pleading obligation") (internal quotations and citations omitted). In the absence of representative examples of false claims, Relator must allege "particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted." *Ebeid*, 616 F.3d at 998-99 (quoting *United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 190 (5th

Cir.2009)).

Not only does Relator fail to plead its AKS theories with requisite specificity, Relator identifies no representative examples of false claims submitted to the government.  Moreover, Relator has not alleged sufficient particular details to otherwise support a "strong inference" that false claims were submitted.  *Kitsap*, 314 F.3d at 1002 ("It is not enough . . .  to describe a private scheme in detail but then to allege simply and without any stated reason for [this] belief that claims requesting illegal payments must have been submitted.") (internal quotations and citations omitted).  As such, the Complaint should be dismissed under Rule 9(b).

### 1.   Phlebotomist Payment Amount Theory Not Pled With Particularity.

As an FCA theory premised on an alleged AKS violation, Relator's phlebotomist theory fails because Relator has not identified the details—the who, what, when, where, or how—of the alleged AKS violation with sufficient particularity nor with the particularity that would to lead to the "strong inference" that claims in violation of the AKS were submitted to the government for payment.  Relator especially fails to plead with particularity any remuneration Vibrant paid to a referral source or that any remuneration was an inducement for referrals.

### a.   Payments to phlebotomists are not remuneration to referral sources.

Relator does not identify with particularity any remuneration Vibrant paid to any referring physician.  *See United States v. Chang*, No. 13-cv-3772-DMG, 2017 WL 10544289, at *8 (C.D. Cal. July 25, 2017) (dismissing AKS-based FCA claim for failure to plead remuneration to referring physicians).  Relator alleges Vibrant's phlebotomist agreements "allow[ed]" physicians to "supplement their income," without specificity.  Compl. ¶ 34.  Relator alleges that, by ordering tests, physicians "are able" to "pay their staff less," "appease their staff," or "obtain a portion of the medical staff's kickback," but identifies no examples nor other details that would satisfy Rule 9(b).  *Id.*  Nowhere does Relator identify *which* physician practices its allegations relate to or *which* staff member(s) at those practices were paid less or appeased as a result of this arrangement, much less other supporting particularity, such as *how much less* the practice paid the staff member or *when* the practice made compensation adjustments or facts supporting *why* adjustments were made.  Nor does Relator identify a single instance of Vibrant directing to a physician a portion of the fee owed to a phlebotomist.  This failure to specify the who, what, when,

where or how is fatal to Relator's complaint.

Perhaps Relator's most sensational allegation is that Vibrant independently contracted the spouse of a physician as a phlebotomist despite that the spouse allegedly was not a licensed phlebotomist. Compl. ¶ 33. Yet, Relator fails to identify by name the physician or the spouse or who at Vibrant purportedly suggested to the physician that Vibrant contract with a family member, much less where or how these communications occurred, or specifically what was said by who. *See id.* Without these details, Relator is far from meeting its burden under Rule 9(b). *See United States ex rel. Dan Abrams Co. LLC*, *v. Medtronic Inc.*, No. LA CV15-01212 JAK (ASx), 2018 WL 5266863, at *8 (C.D. Cal. June 7, 2018) (dismissing AKS-based FCA claims where relators relied on "general allegations that [did] not identify any physicians, or categories of them, who actually received payment in connection with decisions").

The Complaint's exhibits do not help Relator. Indeed, Relator has steadfastly redacted the identity of the phlebotomists, and does not even assert whether each contract was with a family member, staff member, neither, or both. Compl. ¶¶ 36-38, Ex. A (Dkt. 1 at 26, 31-32), Ex. B (Dkt. 1 at 34-38). Similarly, Relator attaches a scanned copy of a redacted check in an attempt to support its claim that Vibrant paid a physician's family member for a blood draw he or she did not perform. Compl. ¶ 38, Ex. C. There are two things deficient about this allegation—first, the redacted name prohibits identification of *who* this check is made out to, and fails to link his or her relation to a physician; and second, there are no factual details supporting the allegation that this individual did not perform the blood draw(s). There are no details supporting that this check resulted in any remuneration to a referring physician. *See Vess*, 317 F.3d at 1108 (affirming dismissal of complaint where conclusory allegations failed to pass muster under Rule 9(b)). Relator has failed to plead remuneration to any referral source with specificity. The vaguely-pled Complaint forces Vibrant to blindly defend itself, in direct violation of Rule 9(b). *See Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001) ("To comply with Rule 9(b), allegations of fraud must be specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny they have done anything wrong.") (internal quotations and citations omitted).

b.      **Payments to phlebotomists are not inducements.**

Relator also fails to allege with specificity that Vibrant made any payments *in order to* induce referrals of government-insured tests or even that Vibrant received any referrals resulting from the payments.  Relator does not identify with specificity any offer by Vibrant to exchange payments for referrals for tests, and, moreover, inducement cannot be inferred from conclusory assertions, such as vaguely-pled allegations that: Vibrant paid unlicensed phlebotomists and individuals not performing blood draws; unnecessary tests were ordered; and Vibrant paid too much for services.

First, the Complaint does not detail any offer Vibrant made to any referral source to offer remuneration in exchange for—*i.e.,* as an inducement for—referrals.  In *United States ex. rel. Gough v. Eastwestproto Inc.*, No. CV 14-465 DMG, 2018 WL 6929332, at *3-4 (C.D. Cal. Oct. 24, 2018), the relator alleged the defendant provided cash and gift cards to hospital case managers in exchange for Medicare referrals and provided ambulance services at or below cost in order to induce Medicare transports.  The court found those allegations insufficient in part because the complaint did not demonstrate that "those offers were actually made" or "that referrals were obtained as a result."  *Id* at *10. Similarly, here, nothing in the Complaint alleges any specific individual at Vibrant made a specific offer to any specific physician in exchange for Medicare referrals.  Instead, the Complaint relies on conclusory allegations that unspecified Vibrant sales representatives contacted unspecified physicians through unspecified means.  *See* Compl. ¶ 32.  Moreover, nowhere does Relator allege *who* referred any business to Vibrant as a result of the alleged phlebotomist contracting, *which* patients' tests were referred to Vibrant, nor *when* any such referred business occurred.  Relator's allegations fail to support a "strong inference" that any false claims were submitted.  Because Relator fails to sufficiently plead the details of alleged inducement, the AKS cannot be a basis for Relator's FCA claims.

Second, Relator's allegations about payments to unlicensed phlebotomists and to individuals not performing blood draws are unsupported.  The Complaint fails to name a single individual Vibrant allegedly paid despite that individual not actually performing a blood draw, or any examples of such blood draws (who performed them, on what patient, when, etc.).

Next, Relator's allegations that, as a result of the alleged arrangement, Vibrant caused tests to be ordered that were neither "reasonable nor necessary," Compl. ¶ 42, are again merely conclusory and

therefore insufficient.  The Complaint does not even specify a single test ordered that was not reasonable or necessary, nor which physician ordered such test, nor when such test was ordered, nor why such test was not medically necessary.  *See, e.g., United States v. Chang*, 2017 WL 10544289, at *12 (C.D. Cal. July 25, 2017); *Ostroff*, 2013 WL 1703377 at *20 (dismissing FCA claim for failure to plead with particularity under Rule 9(b) where "Plaintiff does not attempt to describe *why* any one procedure was unnecessary"); *Frazier*, 812 F. Supp. 2d at 1017 (finding claims regarding medically unnecessary procedures conclusory and insufficient where relator failed to plead facts showing why the procedures were unnecessary).

Finally, Relator's claim that Vibrant's $15 fee is above FMV is groundless.  *See supra* § V.A.1. As such, that claim cannot be a basis from which Relator can infer inducement.  *See Gough*, 2018 WL 6929332, at *8 (relator failed to sufficiently allege discounts for transport services were remuneration because "no comparative . . . rates [were] alleged" to "demonstrate [defendant] received any remuneration").

### 2. Copayment And Deductible Cap Theory Not Pled With Particularity.

Relator's payment waiver theory also fails Rule 9(b).  Relator cannot even sufficiently plead the *what* of the alleged remuneration.  Throughout the Complaint, Relator refers to "caps" or "waivers" on "copayments **and/or** deductibles," Compl. ¶¶ 4, 5, 45, 50 (emphasis added), but which is it?  Caps? Waivers?  On copayments?  Or on deductibles?  Relator's failure to pinpoint *what* the alleged remuneration is only serves to underscore the lack of details it has for the activities it alleges are unlawful.

Moreover, Relator has not pled the other specifics required under Rule 9(b): *who* at Vibrant capped or waived any patients' copayments or deductibles, *when* that occurred, *which* patients' copayments or deductibles were allegedly capped, nor *what* the waived or capped amount was.  The facts in *State ex rel. Hunter Labs., LLC v. Quest Diagnostics Inc.*, No. 1:13-cv-01838-SCJ, 2014 WL 12543888 (N.D. Ga. Mar. 14, 2014), reflect the facts in the present case.[5]  .  There, relators alleged LabCorp violated the AKS and state False Claims Act "by improperly offering deeply discounted fees for laboratory services paid for by medical providers" in exchange for Medicaid referrals.  *Id.* at *1.  Applying Rule 9(b) to the allegations in the Complaint, the court held relators' kickback theory had not been pled with particularity.

---

[5] We believe Relator in *Quest* is the same Relator as the instant case.  *See infra* n.9.

*Id.* at *4.  The court took issue with the complaint's lack of "all detail[s] as to when LabCorp allegedly offered inducements in the form of discounts, what the discounted rates were, and to whom the discounts were offered," *id.*, and dismissed the complaint, *id.* at *6.  Similarly, here, Relator's allegations amount to nothing more than conclusory assertions that lack requisite detail.  Rule 9(b) demands much more.  *Medtronic*, 2018 WL 5266863, at *8-9 (conclusory allegations fail to pass muster under Rule 9(b)).

In one place—and one place only—Relator identifies a Vibrant sales representative by name and claims that representative "explained" Vibrant's alleged capping policy to an unnamed physician.  Compl. ¶ 48.  Yet, the scant information pled about this purported exchange does not plead the exchange with particularity, including because the identity of the physician is concealed and no specific details about the alleged explanation are provided, not even the means of communication.  *See United States ex rel. Regan v. Carolina Liquid Chemistries Corp.,* 2019 WL 3207851, at *7 (dismissing relator's complaint where the complaint failed to "specify any details" of alleged meetings discussing a purported fraudulent marketing and kickback scheme or when they took place).  In addition to not pleading the capping practice with particularity at all (itself fatal to Relator's case), Relator also has failed to plead with particularity crucial AKS elements of remuneration paid to a referral source and inducement.

### a.  Copayment and deductible caps and waivers are not remuneration to referral sources.

Relator's payment waiver theory does not plead with particularity that any waiver of copayments or deductibles, or decision to not send a patient account to collections, constitutes remuneration to *physicians*.  In *United States v. Chang*, 2017 WL 10544289 (C.D. Cal. July 25, 2017), relators brought FCA claims against various physicians and physician practices, including one AKS-based FCA claim alleging routine waivers of copayments for Medicare patients.  There, the court granted in relevant part defendants' motion to dismiss and held the waiver or offer of waiver of copayments was not remuneration *to referring physicians*: "the remuneration—waiver or offer of waiver of co-pays—was offered to patients, not to the referring physicians."[6]  *Id.* at *8.  The court concluded that, "[b]ecause Relators have not

---

[6] The court in *Chang* dismissed based on relator's failure to plead remuneration *to referring physicians*. Whereas the court otherwise found Rule 9(b) was satisfied as to this theory, the details in that complaint were far more specific than Relator's complaint here.  In *Chang*, the complaint specifically identified "a list of ten RIC Medicare patients (identified by patient initials, treatment period, encounters, and Medicare charges) whose co-payments were waived."  *Id.* at *2 n.5. Additionally, there were detailed allegations

sufficiently alleged the referring physicians' receipt of payment or other remuneration in exchange for referrals, Relators have failed to state a claim under the AKS and the FCA." *Id.* The complaint in *Chang* even identified a specific physician by name who refused to refer patients unless their Medicare or Medicaid payments were waived, but this was still insufficient.

Similarly, here, any caps or waivers on copayments or deductibles would accrue to *patients*, not referring physicians. Relator conclusively asserts that this practice constitutes a "significant benefit to a referring physician" because "it allows them to attract and retain patients by promising to perform all lab testing for no more than $25." Compl. ¶¶ 4, 48. However, Relator offers no specific factual details supporting the existence of this ancillary benefit. Relator fails to plead that any physician informed his or her patients of this alleged arrangement, nor is there a single patient alleged to have been a repeat patient or have sought physicians' services because of this alleged practice. Similarly, Relator does not identify any examples of a Vibrant decision to not send a patient account to a collections agency resulting in any remuneration to a referring physician, and such a claim would be too attenuated. Relator's allegations do not pass Rule 9(b) muster as to any remuneration to the referring physicians or practices, and like in *Chang*, its FCA claim predicated on this theory must be dismissed.

### b.    Copayment and deductible caps and waivers are not inducements.

Moreover, the Complaint fails to plead with particularity that the alleged patient payment policies were *in order to* induce any physician to refer business to Vibrant to be paid by a government program. Without sufficient detail that inducement of referrals was the purpose of the alleged caps and waivers, the Complaint cannot meet Rule 9(b) standards as to pleading inducement. For instance, the Complaint does not detail any instance of anyone at Vibrant informing any referral source that patients' copayments or deductibles would be capped or waived *in exchange* for the referral of business.

Moreover, Relator focuses on caps and waivers allegedly provided to *privately* insured patients. Compl. ¶¶ 4-5, 49. But claims under the FCA must involve false claims paid by a *federal health care program*. Relator attempts to address this shortcoming by alleging Vibrant engages in this "practice" to induce referrals from physicians, resulting in "pull through" Medicare and Medicaid business. Compl. ¶¶ 5, 49. But without specific examples of such claims being "pulled through," Relator fails Rule 9(b) for

regarding the "who" and "what" was said. Here, no such details are provided.

this reason, too.  *See United States ex rel. Puhl v. Terumo BCT*, No. CV 17-8446 PSG, 2019 WL 6954317, *4 (C.D. Cal. Sept. 12, 2019) ("allegations that providers submitted false claims to private insurers are not enough to create the strong inference needed to plead an FCA claim"); *United States ex rel. Karp v. Ahaddian*, No. CV 16-500 PSG, 2018 WL 6333670, *4 (C.D. Cal. Aug. 3, 2018) (dismissing FCA claims where complaint only alleged submission of false claims to *private insurers*, not Medicare); *see Frazier*, 812 F.Supp.2d at 1016 (the court dismissed FCA claims because, despite alleging that claims were submitted to the government that were the result of improper doctor and hospital relationships in violation of Stark and AKS, the relator "ha[d] plead no facts regarding actual Medicare referrals").  For this same reason, the single paragraph in Relator's Complaint alleging in conclusory fashion with no details that TRICARE patients were impacted is clearly deficient.  *See* Compl. ¶ 6.  Allegations that lack sufficient supporting factual detail cannot survive Rule 9(b).

### 3.    No "Reliable Indicia" Of False Claims Submission.

There are no "reliable indicia" that compel a different outcome in this case other than dismissal. Relator is not a former employee of Vibrant, nor a physician, patient, or phlebotomist, and seemingly has no concrete connection to the alleged schemes.  Instead, Relator is an outsider with no actual knowledge of its allegations, as evidenced by its inability to plead with particularity required by Rule 9(b).  Without detailed factual support explaining the details of the who, what, where, when and how Vibrant engaged in any purported unlawful kickback "scheme," coupled with other factual support that would convince the Court of Relator's reliability and a strong inference that false claims were actually submitted, the Complaint must be dismissed.  *See Ebeid*, 616 F.3d at 998-99.

### C.    FCA Counts Do Not Meet Materiality Pleading Requirements.

The Complaint should be dismissed for another distinct reason—it fails to plead materiality.  To state a claim under the FCA, the alleged fraud must have been material to the government's decision to pay a claim (*i.e.*, the government would not have paid or likely would not have paid had it known of the alleged underlying conduct).  *See United States ex rel. Escobar v. Universal Health Servs. Inc.*, 136 S. Ct. 1989, 2001 & 2004 n.6 (2016).  The materiality standard is "rigorous" and "demanding."  *Id*. at 2002-03. Here, Relator falls far short of this standard.

Courts rigorously enforce the materiality standard.  In *Knudsen v. Sprint Commc'ns. Co.*, No. C13-

04476 CRB, 2016 WL 4548924 (N.D. Cal. Sep. 1, 2016), this District granted a motion to dismiss an FCA claim based in part on the complaint's failure to adequately plead materiality.  The court explained, "the standard for pleading materiality is 'rigorous' and that FCA plaintiffs must 'plead their claims with plausibility and particularity . . . by, for instance pleading facts to support allegations of materiality." *Id.* at *13.  The court held the relator's "single conclusory" paragraph alleging materiality was insufficient. *Id.*  The court in *United States ex rel. Durkin v. Cty. of San Diego*, 300 F. Supp. 3d 1107 (S.D. Cal. Jan. 11, 2018), similarly held the relator failed to sufficiently plead materiality where the allegations were "conclusory" and lacked factual support.

Even less than the relators in *Knudsen* and *Durkin*, Relator here fails to allege materiality in even a single paragraph in the body of the Complaint and only uses the word "material" when quoting the language of the FCA or when summarizing its causes of action.  Compl. ¶¶ 14, 59-60.  Not only does Relator fail to allege the government would likely have denied payment if it had known of the purported conduct, but the opposite is true.  The government has declined to intervene in this suit and has not otherwise sought to recoup payments made to Vibrant.  And why would the government seek repayment? The "schemes" Relator alleges reflect legitimate business practices, not AKS violations.  *See supra* § V.A. Because the Complaint lacks rigorous allegations of materiality, the Complaint must be dismissed.

### D.    FCA Counts Do Not Meet AKS Or FCA Scienter Pleading Requirements.

Yet another reason to dismiss the Complaint is Relator's failure to plead scienter under both the AKS and the FCA.  Although under Rule 9(b) "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally," a relator alleging AKS violations must still meet the high burden of alleging specific facts plausibly supporting that defendant acted "knowingly and willfully."  *See Chang,* 2017 WL 10544289 at *8 (granting motion to dismiss FCA claims predicated on AKS, explaining the AKS "does not criminalize referrals for services paid for by Medicare or Medicaid—it criminalizes knowing and willful acceptance of remuneration in return for such referrals." (quoting *Klaczak v. Consol. Med. Transp.*, 458 F.Supp.2d 622, 678 (N.D. Ill. 2006)).[7]

Here, Relator fails to meet this burden for either of its AKS-based theories.  The Supreme Court

---

[7] *See also* Special Fraud Alert – June 25, 2014, p. 2. ("OIG recognizes that the lawfulness of any particular arrangement under the anti-kickback statute depends on the intent of the parties."); RJN Ex. C.

defines "willfulness" as acting "intentionally and purposefully and with the intent to do something that the law forbids, that is, with the bad purpose to disobey or disregard the law." *Bryan v. United States*, 524 U.S. 184, 190 (1998). Here, Relator alleges intent in only a conclusory manner by stating that Vibrant "knowingly" violated the FCA, but fails to provide a factual basis for its allegation. Broad, conclusory allegations regarding a defendant's intent are not sufficient. Without factual support or specificity regarding intent, including criminal intent under the AKS, Relator's Complaint cannot survive a motion to dismiss. See *Iqbal*, 556 U.S. at 686-87.

Relator likewise fails to plead scienter under the FCA. The FCA requires plausible allegations that defendant acted with "actual knowledge," "deliberate ignorance," or "reckless disregard" as to the truth or falsity of any claim. *See id.*; *see also* 31 U.S.C. § 3729(b)(1)(A). "The FCA's scienter requirement is rigorous." *United States ex rel. Krawitt v. Infosys Tech. Ltd., Inc.*, 372 F. Supp. 3d 1078, 1089-1090 (N.D. Cal. March 12, 2019) (internal quotations and citations omitted).

Throughout the Complaint, Relator only summarily alleges that Vibrant acted with any purported knowledge, but fails to allege any compelling facts that would lead to an inference of scienter. Moreover, Vibrant could not have been operating with any requisite scienter under the FCA where Vibrant was engaged in lawful business practices. *See supra* § V.A. *See Durkin*, 300 F. Supp. at 1128 ("an inference of scienter must be more than merely plausible or reasonable—it must be cogent and at least as compelling as an opposing inference or nonfraudulent intent") (internal quotations and citations omitted). The closest Relator comes to pleading any level of knowledge is an attempt to allege scienter as it relates to its payment waiver theory. Relator conclusively states that "VIBRANT knows this strategy is illegal because it provides a benefit to a referring physician." Compl. ¶ 48. But the mere possibility of an ancillary benefit to a physician is not illegal nor does this statement plausibly allege scienter. Relator goes on to allude to intent in the same paragraph by stating, "in an effort to conceal its scheme and avoid liability, VIBRANT does not list this policy on its website." Compl. ¶ 48. Again, Relator fails to plausibly allege scienter. Even if Vibrant had the alleged policy (it does not), it is hardly unusual for a business to not post each and every policy on its website, and in fact, there are numerous other reasons a company would not do so (*i.e.* proprietary reasons, business judgment, etc.). Thus, Relator's attempt to use this alleged omission from Vibrant's website to allege scienter falls short, as "courts must also consider an obvious alternative

explanation for the defendant's behavior." *See Knudsen*, 2016 WL 4548924 at *10, 12 (finding that "obvious alternative explanations" of conduct "weak[ens] the chain of inferences [relator] uses to allege scienter") (internal quotations and citations omitted).   Rather than pleading facts to support scienter, Relator pleads scienter in an insufficient, conclusory fashion that raises inferences of alternative explanations for conduct, not of fraudulent intent.   Because Relator fails to allege scienter with any plausible support, the Complaint must be dismissed.

### E.   California FCA Count Is Also Deficient.

The Court should also dismiss Relator's CFCA Causes of Action (Seven and Eight) because Relator's CFCA claims fail for the same reasons as Relator's federal FCA claims. *See e.g. United States v. Somnia, Inc.*, 339 F. Supp. 3d 947, 954 (E.D. Cal. Sep. 7, 2018) (dismissing FCA and CFCA claims and stating: "[t]he CFCA was modeled on the FCA, and state courts turn to federal FCA case law for guidance in interpreting the CFCA"); *United States v. Safran Grp.*, No. 15-CV-00746-LHK, 2017 WL 235197, at *4 (N.D. Cal. Jan. 19, 2017) (dismissing FCA and CFCA claims, applying same analysis to both claims because "the statutory provisions of the federal FCA and California FCA are the same"); *see also State ex rel. Standard Elevator Co. v. W. Bay Builders, Inc.*, 197 Cal. App. 4th 963, 973, (2011) ("The CFCA was enacted in 1987 and was modeled on the federal False Claims Act"); *State v. Altus Fin., S.A.*, 36 Cal. 4th 1284, 1299 (2005) ("the CFCA is patterned on similar federal legislation and it is appropriate to look to precedent construing the equivalent federal act") (internal quotations and citations omitted).

### F.   IFPA Claim Must Be Dismissed.

Relator brings claims pursuant to Sections 1871.7(a) and (b) of the California Insurance Code. These provisions make it unlawful to "knowingly employ runners, cappers, steerers, or other persons" to procure clients or patients or obtain services or benefits under an insurance contract and permit a cause of action for violations of Section 550 of the California Penal Code.   Cal. Ins. Code § 1871.7(a)-(b).   A violation of Section 550 occurs where (1) defendant knowingly presents a false claim, and (2) with the intent to defraud. *See People ex rel. Gov't Emps. Ins. Co. v. Cruz*, 244 Cal.App.4th 1184, 1193 (2016). Relator's IFPA causes of action are predicated on the exact same allegations that comprise Relator's federal and state-law FCA causes of action.   Compl. at ¶ ¶ 51-53.   Relator's claims under the IFPA are deficient for two reasons.   First, Relator lacks standing to bring a *qui tam* cause of action. Second, Relator

fails to sufficiently allege that any violation of the Insurance Code occurred.

### 1. Relator Lacks Standing To Bring An Insurance Fraud Claim.

Relator's claim fails because Relator is not an "interested person" afforded standing under the IFPA. "Lack of statutory standing requires dismissal for failure to state a claim under Rule 12(b)(6)." *Head v. Wilkie*, 936 F.3d 1007, 1012 n.4 (9th Cir. 2019) (quoting *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011)). The IFPA provides that "any interested persons, including an insurer, may bring a civil action for a violation of this section." Cal. Ins. § 1871.7(e)(1).[8] The term "interested person" has been analyzed by California courts in other statutory contexts that are instructive. *See Torres v. City of Yorba Linda,* 13 Cal. App. 4th 1035, 1038 (1993) (affirming lower court's decision to sustain City's demurrer without leave to amend because plaintiffs were not sufficiently "interested" under Cal. Civ. Proc. Code § 863, and thus lacked standing); *Associated Boat Indus. of N. Cal. v. Marshall*, 230 P.2d 379, 380 (Cal. Ct. App. 1951) (*disapproved of on other grounds by Envtl. Prot. Info. Ctr. v. Dep't of Forestry & Fire Prot.*, 50 Cal. Rptr. 2d 892 (1996) (an "interested person" is one "having a direct, and not a merely consequential, interest in the litigation").

One federal district court has specifically analyzed the meaning of "interested person" under the IFPA and Illinois IFPA ("IL-IFPA"). In *United States ex rel. Lutz v. Lab. Corp. of Am. Holdings*, No. 9:14-cv-3699-RMG, 2019 WL 236799, at *1 (D.S.C. Jan. 16, 2019), South Carolina resident plaintiffs sued LabCorp under the federal FCA, IFPA, and IL-IFPA, alleging LabCorp engaged in fraudulent schemes such as billing for unnecessary medical tests and paying kickbacks to physicians to order LabCorp tests. LabCorp filed a motion to dismiss, arguing in part that plaintiffs lacked standing under the IFPA and IL-IFPA because they lacked any connection to LabCorp or any private insurers to be considered "interested" under the statutes. *Id.* The district court agreed with LabCorp, finding that an "interested person" is "something more than merely being a source of the information or standing to gain from any ultimately [*sic*] recovery is required to qualify as an 'interested person' under the statutes."[9] *Id.*

---

[8] Standing under the IFPA and federal FCA are meaningfully different. While both are *qui tam* statutes, the IFPA only permits "interested persons" to bring civil lawsuits pursuant to Cal. Ins. Code § 1871, whereas the federal FCA permits "a person" to bring a civil lawsuit. 31 U.S.C. § 3730(b)(1). By qualifying "person" with "interested," the California legislature limited the reach of who can and cannot bring *qui tam* actions under the IFPA, and Relator is not within its limitations.

[9] The District Court discussed various California state law cases that interpreted the term "interested person" in other contexts to mean "a person having a direct, and not merely consequential interest in the

at *5.  The district court determined that plaintiffs were not "interested" and lacked standing because the complaint did not allege that they had "any contacts, were employed or were in any other way affected by or involved in the submission of allegedly false claims and/or kickback tainted claims."  *Id.*

*Lutz* is instructive.  Relator lacks standing to sue Vibrant pursuant to the IFPA.  Similar to *Lutz*, the Complaint makes zero allegations regarding Relator's connection to Vibrant.  Relator does not allege that it was ever employed by Vibrant, that it is connected to a commercial insurer, that it is connected to a physician or patient, or that it is in any way affected by or involved in the alleged fraudulent activity. Put simply, there are no allegations that Relator has any connection to its allegations.  Accordingly, Relator is not an "interested person," and therefore, cannot maintain its IFPA causes of action.

### 2.    Relator Fails To State A Claim Under IFPA.

In addition, Relator has not otherwise stated a claim under the IFPA with the particularity required under Rule 9(b).  *See Vess*, 317 F.3d at 1103 (holding Rule 9(b) applies to state law causes of action alleging fraud).  Because Relator's insurance fraud claims arise out of the same alleged conduct as its FCA claims, the arguments made throughout this Motion similarly apply here.  *See Ostroff*, 2013 WL 1703377 at *20-21 (dismissing IFPA cause of action in part because plaintiff failed to allege its claim with particularity and only made conclusory assertions); *see Chang*, 2017 WL 10544289 at *15 (applying Rule 9(b) to IFPA claims, and dismissing IFPA claims for failure to meet the rule's heightened pleading requirements).  Relator makes only bare assertions regarding commercially insured patients.  For instance, Relator conclusorily alleges, "a significant portion of a physician's non-Medicare and non-Medicaid patients will be covered by private insurance."  Compl. ¶ 44.  But this assertion discloses nothing. Nowhere does the Complaint provide details for any individual representative patient or details about which insurers were allegedly defrauded, how, when, or by whom.  Nor does Relator identify with specificity any purported unlawful runner, capper, or steerer, or detail how Vibrant purportedly employed that person in order to induce unlawful referrals.  Relator's IFPA allegations cannot survive Rule 9(b).

### G.    <u>This Is The Exact Type Of Case That Should Be Dismissed Under Rule 9(b).</u>

Rule 9(b) serves three objectives:

(1) to provide defendants with adequate notice to allow them to defend the

litigation."  *Id.* at *4.

charge and deter plaintiffs from the filing of complaints 'as a pretext for the discovery of unknown wrongs'; (2) to protect those whose reputation would be harmed as a result of being subject to fraud charges; and (3) to 'prohibit [] plaintiff[s] from unilaterally imposing upon the court, the parties and society enormous social and economic costs absent some factual basis.'

*Kearns*, 567 F.3d at 1125 (quoting *In re Stac Elecs. Sec. Litig.*, 89 F.3d 1399, 1405 (9th Cir. 1996)) (brackets in original). Applying Rule 9(b) to dismiss the Complaint would satisfy Rule 9(b)'s purposes in multiple ways. First, the Complaint does not provide Vibrant notice of the claims against it. Relator's vague allegations and utilization of redacted documents leave Vibrant without notice of the wrongdoing it is alleged to have committed. Relator hides the identity of not only itself, but also of the alleged players in its Complaint.

Moreover, Relator should not be allowed to proceed to discovery on a claim it cannot support at the pleading stage. *See Bly-Magee*, 236 F.3d at 1018 ("Rule 9(b) serves . . . to deter the filing of complaints as a pretext for the discovery of unknown wrongs"); *Periguerra v. Meridas Capital, Inc.*, No. C 09-4748 SBA, 2010 WL 395932, *5 (N.D. Cal. Feb. 1, 2010) ("Allowing Plaintiffs to conduct discovery in order to comport with heightened pleading requirement applicable to fraud-based claims is directly contrary to the purpose of Rule 9(b); namely, that plaintiffs show that there is some substance to their claim of fraud before subjecting a defendant to the rigors of the discovery process."); *United States ex rel. Cericola v. Federal Nat. Mortg. Assoc.*, 529 F.Supp 2d 1139, 1146 (C.D. Cal. 2007) (pleading a "general fraud scheme, in the hope that [plaintiff] can develop actual evidence of fraud through the discovery process . . . is not sanctioned under either the FCA or the pleading requirements set forth in the Federal Rules of Civil Procedure."). Relator's counsel has already signaled it plans to use early discovery to amend its Complaint. This admission further evidences the shortcomings in the Complaint, but also more generally, the lack of information known to Relator. Indeed, the FCA primarily seeks to "encourage insiders to disclose information necessary to prevent fraud on the government," not outsiders who lack facts to support the alleged fraud they hope to convince the court exists. *See Ebeid*, 616 F.3d at 999.

Relator has brought this lawsuit before, against other entities, occasionally using identical allegations.[10] *See* RJN Ex. G. Relator's motive in bringing this case is not based on its status as an

---

[10] The lawsuits we located are: *Riedel v. Bluewave Healthcare Consultants Inc.*, No. 9:15-cv-02485 (D.S.C. June 19, 2015); *Hunter Lab., LLC et al v. Quest Diagnostics Inc. et al*, No. 1:13-cv-01129 (E.D.

"insider[] privy to a fraud on the government," but instead as a serial relator looking to coerce a settlement from a law-abiding entity. *Bly-Magee*, 236 F.3d at 1019. On the other hand, the pendency of this meritless suit tarnishes the reputation of Vibrant. *See Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985) ("Rule 9(b) . . . protects potential defendants . . . from the harm that comes from being charged with the commission of fraudulent acts."). Because the allegations of fraudulent kickbacks serve to attack Vibrant's reputation, lack detail, are not based on actual knowledge by an insider, and are used as a pre-text to discovery, this case is the exact type of case that Rule 9(b) was designed to prevent from proceeding past the motion to dismiss stage. Accordingly, this Court should not advance the baseless allegations contained in the Complaint.

### H.   The Complaint Should Be Dismissed With Prejudice.

Relator should not be given an opportunity to amend its complaint. The typical leniency in granting leave to amend "is subject to several limitations" including "undue prejudice to the opposing party, bad faith by the movant, futility, and undue delay." *See Cafasso*, 637 F.3d at 1058 (affirming denial of plaintiff's motion to amend, citing undue prejudice, bad faith, and futility of amendment); *see also Maa v. Ostroff*, No. 12-cv-00200–JCS, 2013 WL 5755043, *13 (N.D. Cal. Oct. 23, 2013) (dismissing complaint with prejudice). Here, there may be bad faith (*see supra* § V.G.). Amendment would also be futile. Relator had over four years to amend the Complaint and has chosen not to, presumably because Relator, having never been employed by Vibrant, possesses no knowledge of Vibrant's actual business operations. There is no reason to believe Relator is in a position to provide the additional particularity needed to withstand a motion to dismiss. Moreover, both the United States and the State of California declined to intervene in this lawsuit. Amendment of this harassing and meritless lawsuit would be unduly delayed and futile and would only reward Relator's bad faith. Thus, Vibrant respectfully requests this Court

---

Va. Sep. 9, 2013); *State of Georgia ex. rel., et al. v. Lab Corp. of America, et al*, No. 1:13-cv-01838 (N.D. Ga. May 31, 2013); *Riedel v. Bos. Heart Diagnostics Corp.*, No. 1:12-cv-01423 (D.D.C. August 28, 2012). *See  Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006) ("We may take judicial notice of court filings and other matters of public record"); *Headwaters Inc. v. U.S. Forest Serv.*, 399 F.3d 1047, 1051 n.3 (9th Cir. 2005) (taking judicial notice of other dockets). Our assumption is based on a business search of "STF LLC" on the California Secretary of State website, which included filings naming "Chris Riedel" as the manager of STF LLC. *See* https://businesssearch.sos.ca.gov/Document/RetrievePDF?Id=201526710052-28150486 (last visited May 8, 2020); *see* RJN Ex. H; *see also Pension Plan for Pension Tr. Fund for Operating Engineers v. Weldway Const., Inc.*, 920 F. Supp. 2d 1034, 1036, n.1 (N.D. Cal. 2013) (taking judicial notice of documents from the California Secretary of State website).

dismiss the Complaint with prejudice.

## VI.   **CONCLUSION**

For the foregoing reasons, Vibrant requests the Court dismiss the Complaint in full, with prejudice.

DATED:  May 18, 2020

**FOLEY & LARDNER LLP**
Thomas S. Brown
Judith A. Waltz
Lori A. Rubin


 _/s/ Thomas S. Brown_
THOMAS S. BROWN
Attorneys for Defendant
Vibrant America, LLC