JUSTIN T. BERGER (SBN 250346)
jberger@cpmlegal.com
MALLORY A. BARR (SBN 317231)
mbarr@cpmlegal.com
**COTCHETT, PITRE & McCARTHY, LLP**
San Francisco Airport Office Center
840 Malcolm Road
Burlingame, CA 94010
Telephone: (650) 697-6000
Facsimile: (650) 697-0577

*Attorneys for Relator STF, LLC*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.* STF, LLC, an organization; STATE OF CALIFORNIA; ex rel. STF, LLC, an organization,<br><br>　　　　　　Plaintiffs,<br><br>　　v.<br><br>VIBRANT AMERICA, LLC, a Delaware limited liability company,<br><br>　　　　　　Defendants. | CASE NO. 3:16-cv-02487-JCS<br><br>**JOINT STATEMENT RE: CONTINUED NEED FOR DISCOVERY STAY** |

**JOINT STATEMENT RE: CONTINUED NEED FOR DISCOVERY STAY;**
**CASE NO. 3:16-cv-02487-JCS**

Pursuant to the Joint Stipulation and Order Re: (1) Temporary Stay of Discovery, (2) Selection of Mediator, (3) Selection of Mediation Date, ECF No. 51 ("Order re Temporary Stay"), Relator STF, LLC ("Relator") and Defendant Vibrant America, LLC ("Vibrant") (collectively, "Parties") respectfully submit this joint statement setting forth the Parties' respective positions as to whether there is good cause for a continued stay of discovery.

## I. BACKGROUND

Vibrant is in the business of serology. Historically, it has tested blood for the presence of molecules reflective of heart disease, allergies, and other ailments. But, in light of the spread of COVID-19, Vibrant quickly worked to launch serological blood testing to test for the presence of coronavirus antibodies. To allow Vibrant the opportunity to increase its capacity to conduct these tests, the Relator agreed to an initial temporary stay of discovery of 90 days and, prior to that stay expiring, the Parties agree to meet and confer regarding any continued need for a stay.  Dkt. 51 at ¶¶ 1, 3.

The Parties met and conferred via telephone on July 8, 2020.

## II. RELATOR'S POSITION

A continued stay of discovery will prejudice Relator's preparation of its case, including in preparing for the Parties' required mediation in September.  Although Relator understands Defendant's ongoing involvement in COVID-19 testing, a further stay of discovery is unnecessary and inappropriate.

In deciding whether to exercise its discretion to stay proceedings, courts weigh competing interests, including: (1) the possible damage which may result from granting a stay; (2) the hardship or inequity a party may suffer in being required to go forward; and (3) the orderly course of justice measured in terms of simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay.  *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962) (citing *Landis v. N. Am. Co.*, 299 U.S. 248, 254–55 (1936)); *see also, Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1110 (9th Cir. 2005).  "A party seeking a stay of discovery carries the heavy burden of making a 'strong showing' why discovery should be denied." *Gray v. First Winthrop Corp.*, 133 F.R.D. 39, 40 (N.D. Cal. 1990) (quoting *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975)).

### A. A continued stay will cause hardship and inequity to Relator.

As the party requesting a stay, Vibrant "must make out a clear case of hardship or inequity in being required to go forward if there is even a fair possibility that the stay . . . will work damage for some one else." *Landis,* 299 U.S. at 255; *see also Edwards v. Oportun, Inc.*, 193 F. Supp. 3d 1096, 1101 (N.D. Cal. 2016) (quoting same).

Here, imposing a stay would cause hardship and inequity to Relator because it will impair Relator's ability to depose witnesses before they become unavailable or their memories fade, and before key documents are inadvertently lost or destroyed. It will also prevent Relator from discovering the identities of as-yet unnamed witnesses to pursue third-party discovery. Relator has already waited four years since filing its case in May 2016 (which remained under seal pending the government's investigation until March 2020) to litigate its claims. Dkt. 1; Dkt. 32. Further delay in commencing discovery will only cause memories to fade further, and evidence to grow staler. Moreover, Relator is unable to assess any settlement options without discovery, severely hampering Relator's meaningful engagement in mediation before September 17, 2020 as ordered by this Court. Dkt. 55. Thus, Relator will be harmed by a continued discovery stay.

### B. There is no harm to Vibrant in proceeding with discovery.

Given the harm Relator will endure if a stay continues, Vibrant "must make out a clear case of hardship or inequity in being required to go forward" with discovery. *Landis,* 299 U.S. at 255. Vibrant impliedly claims it is unable to participate in discovery due to its involvement in COVID-19 testing. However, Vibrant does not give any explanation for how this harms Vibrant's interest in this litigation nor a time frame for when this involvement will moderate. Nor does Vibrant explain why its non-laboratory employees – such as sales representatives and executives – cannot assist in preparing discovery responses or sit for depositions.

Moreover, there are reasonable alternatives to imposing a blanket discovery stay. For example, Vibrant could request extensions to response deadlines and establish a rolling document production to accommodate any staffing concerns. This is preferable to a blanket stay of discovery preventing this case from moving forward at all. *See, e.g., Procter & Gamble Co. v. Kraft Foods Global, Inc.*, No. C 08-0930 PJH, 2008 WL 3833576 at *2 (N.D. Cal. Aug. 15, 2008) (permitting

limited discovery).  If some delay of discovery is warranted in this case (which it is not), the best way to determine which discovery should proceed is via a Scheduling Conference with the Court.

### C. Judicial economy would be best served by allowing discovery to begin.

The Court has inherent power to grant or deny a stay request.  *Landis,* 299 U.S. at 255 ("[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the cases on its docket with economy of time and effort for itself, for counsel, and for litigants."); *see also Filtrol Corp. v. Kelleher*, 467 F.2d 242, 244 (9th Cir. 1972).  This objective is grounded by the overarching principle of "secur[ing] the just, speedy, and inexpensive determination of every action." Fed. R. Civ. P., rule 1.

Vibrant is effectively asking for an indefinite stay of discovery while the COVID-19 pandemic persists. That alone cannot be enough.  There is no indication the COVID-19 pandemic will alleviate significantly in the immediate future.  Yet, this "new normal" cannot bring this case to a grinding halt.  Relator has a right "to a reasonably prompt determination of [its] civil claims." *See Roule v. Patraeus*, No. C 10-04632 LB, 2012 WL 2367873 at *6 (N.D. Cal. June 21, 2012).  That requires discovery to move forward so that the Parties can prepare for mediation and trial.

## III. DEFENDANT'S POSITION

Upon a finding of good cause, this Court has broad discretion to grant a protective order to stay discovery.  Fed. R. Civ. P. 26(c); *Little v. City of Seattle*, 863 F.2d 681, 685 (9th Cir. 1988) ("The district court has wide discretion in controlling discovery.").  In determining whether there is good cause for a stay of discovery, the Court should "balance the interests in allowing discovery against the relative burdens to the parties (and nonparties)." *Taylor v. Los Angeles Police Dep't*, No. EDCV99-0383-RT (RCX), 1999 WL 33101661, at *7 (C.D. Cal. Nov. 10, 1999) (internal citations and quotations omitted).[1]

---

[1] The cases Relator cites are inapplicable here, where Vibrant requests to stay discovery pursuant to its resource-intensive efforts to combat a public health emergency and pursuant to a pending motion to dismiss under Rule 9(b).  *Landis* related to the standard for "the power of the court to stay proceedings [in full] in one suit until the decision of another, and upon the propriety of using such a power in a given situation." 299 U.S. at 249.  *CMAX* related to a mandamus proceeding seeking to vacate an order postponing trial, after discovery had concluded.  *See* 300 F.3d at 266.  *Lockyer* related to a stay of all proceedings in the case pending resolution of Chapter 11 petitions.  *See* 398 F.3d at 1100 (9th Cir. 2005).  In *Gray*, the defendants only stated there was good cause in a conclusory

The equities weigh decisively in favor of a continued stay here. As described in the attached Declaration of Vasanth Jayaraman, on or about March 30, 2020, Vibrant launched a new serological blood test procedure related to the novel coronavirus pandemic, commonly referred to as COVID-19. It is a blood test that works by looking to see whether an individual's blood contains antibodies that it would have developed against COVID-19 antigens. These blood tests can identify people that were already infected and have recovered from the virus, including those who were never diagnosed either because they did not display symptoms or were unable to get a test. Scientists expect that these individuals will be safe from re-infection for a period of time and one of the goals of the test is to determine whether these people, which will likely include frontline healthcare professionals, can return to work earlier than anticipated without the test results. The serological tests could also eventually help scientists answer epidemiological questions about the spread of the virus and assist in developing a vaccine. On or about June 4, 2020, Vibrant was granted an Emergency Use Authorization (EUA) by the Food & Drug Administration ("FDA") for both serum and dried blood spot testing. This EUA was authorized to allow Vibrant to assist in responding to the public health emergency that has a significant potential to affect the national security or the health and security of United States citizens living abroad, and that involves the virus that causes COVID-19. A copy of the FDA's letter authorizing the EUA is attached for the Court's review to Mr. Jayaraman's declaration. Vibrant is the first and only laboratory in the country at this time to conduct the dried blood spot testing. Vibrant's laboratory facilities typically processes approximately 400 to 500 samples/tests per day. Following the launch of the serological blood testing, Vibrant is processing 600 to 800 samples per day. Vibrant's current maximum capacity is approximately 1,000 samples/tests per day. Given the recent spike in positive COVID-19 tests results in the bay area community and throughout California, Vibrant anticipates that demand for further testing will ultimately be closer to 5,000 samples per day. Consequently, Vibrant is currently undergoing

---

fashion, and at any rate that case did not involve a motion to dismiss under Rule 9(b). *See* 133 F.R.D. at 40. *Edwards* related to a request for a stay pending another court case. *See* 193 F. Supp. 3d at 1100. *Procter & Gamble Co.* related to a request for stay pending patent reexamination proceedings. 2008 WL 3833576, at *2. In *Roule*, the court held that, "the possibility that the government 'may' involve the state secrets privilege is not sufficient to stay the case or discovery." 2012 WL 2367873, at *1.

JOINT STATEMENT RE: CONTINUED NEED FOR DISCOVERY STAY; 4
CASE NO. 3:16-cv-02487-JCS

construction work on Vibrant's facilities in order to create more space for more equipment, acquiring additional equipment and personnel, and dramatically pivoting its business operations, which impacts all of its employees. A continued stay is needed so that Vibrant may continue to focus resources where the crisis most demands them.

Moreover, Vibrant continues to devote resources to developing new COVID-19 testing technologies and to refining its current testing, including developing a COVID-19 swab test with the FDA. Once the swab test is developed, the demand for Vibrant's laboratory services will continue to increase. It is essential that Vibrant be able to devote its current business practices on meeting the anticipated increase in daily testing to assist in combating this public health emergency.

Relator would not be prejudiced by a continued stay. Vibrant is complying with its document retention obligations, allaying Relator's purported concern that documents may be "lost or destroyed." Moreover, despite a general stay of discovery and as counsel discussed during their meet and confer conference on July 8, Vibrant is willing to meet and confer with Relator on reasonable, limited pre-mediation discovery so that the parties are able to meaningfully engage in mediation. Relator first raised a request for pre-mediation discovery on July 8, not providing sufficient time for the parties to identify the scope of reasonable pre-mediation discovery before today's filing deadline. Vibrant believes the best way to determine the scope of pre-mediation discovery is meeting and conferring among the parties, without the need to involve this Court or the Court's resources, while staying the broader discovery process.

In addition, a stay of discovery necessarily results in evidence growing older, but that is not reason enough to proceed when the equities dictate otherwise. Here, it has already been four years since this case was filed, and staying discovery a matter of months while Vibrant focuses on developing new COVID-19 testing technologies, significantly building out COVID-19 testing capacity, involving construction to its facility, equipment procurement, personnel hiring, and dramatically pivoting its business operations, to address a pandemic does not prejudice Relator. The drastic changes at Vibrant while Vibrant rises to help meet the need for increased testing and other demands of the pandemic impact all of its employees (not just lab employees, as Relator suggests). A

continued stay is needed so that Vibrant may continue to focus resources (time, energy, focus, staff, and money) where most important right now – *i.e.*, public health.

Moreover, a plaintiff's desire to engage in discovery sooner rather than later has not deterred courts from previously ruling that stays of discovery are appropriate, particularly where, as here, the complaint is subject to a (meritorious) challenge under Federal Rule of Civil Procedure Rule 9(b). Plaintiffs alleging fraud should not be permitted to proceed to discovery on a claim it cannot support at the pleading stage. *See Bly-Magee v. California*, 236 F.3d 1014, 1018 (9th Cir. 2001) ("Rule 9(b) serves . . . to deter the filing of complaints as a pretext for the discovery of unknown wrongs"); *Periguerra v. Meridas Capital, Inc.*, No. C 09-4748 SBA, 2010 WL 395932, *5 (N.D. Cal. Feb. 1, 2010) ("Allowing Plaintiffs to conduct discovery in order to comport with heightened pleading requirement applicable to fraud-based claims is directly contrary to the purpose of Rule 9(b); namely, that plaintiffs show that there is some substance to their claim of fraud before subjecting a defendant to the rigors of the discovery process."); *United States ex rel. Cericola v. Federal Nat. Mortg. Assoc.*, 529 F.Supp 2d 1139, 1146 (C.D. Cal. 2007) (pleading a "general fraud scheme, in the hope that [plaintiff] can develop actual evidence of fraud through the discovery process . . . is not sanctioned under either the FCA or the pleading requirements set forth in the Federal Rules of Civil Procedure."). Plaintiffs alleging fraud should comply with federal pleading standards prior to advancing to discovery. Even if there were not a public health emergency demanding Vibrant resources and attention, Vibrant would still seek a stay of discovery in this case pending the filing of a complaint that actually meets pleading standards (something Relator will not be able to accomplish, as discussed in Vibrant's Motion to Dismiss).[2] The pendency of the Motion to Dismiss is another reason to continue to stay discovery.

---

[2] *See also Reveal Chat Holdco, LLC v. Facebook, Inc.*, No. 20-CV-00363-BLF, 2020 WL 2843369 (N.D. Cal. Apr. 10, 2020) (discovery is appropriately stayed pending the resolution of a motion to dismiss when the pending motion is "potentially dispositive of the entire case" and "can be decided absent additional discovery") (internal citations omitted); *Cellwitch, Inc. v. Tile, Inc.*, No. 4:19-CV-01315, 2019 WL 5394848, at *2 (N.D. Cal. Oct. 22, 2019) (staying discovery pending resolution of the motion to dismiss because "[plaintiff] does not demonstrate that it will suffer harm if the Court stays discovery briefly until after the Court rules on [the] motion to dismiss")

In short, the balance of equities supports a further stay of discovery in this case (except limited, pre-mediation discovery as to which the parties are actively meeting and conferring) until Vibrant resources are no longer consumed by the rush to convert its operations in response to the public health crisis, and until such time that Relator has a viable complaint (if ever). Vibrant does not have a date certain as to when each of these metrics will be met; as such, Vibrant respectfully requests the parties file a statement every ninety days updating the Court regarding each parties' position as to the need for a continued stay. That way, this case can proceed to discovery once the balance of equities dictates such.

Dated: July 10, 2020	**COTCHETT, PITRE & McCARTHY, LLP**

By: ___/s/ Mallory A. Barr___
JUSTIN T. BERGER
MALLORY A. BARR

*Attorneys for Relator STF, LLC*

Dated: July 10, 2020	**FOLEY & LARDNER LLP**

By: ___/s/ Thomas S. Brown___
THOMAS S. BROWN

*Attorneys for Defendant VIBRANT AMERICA, LLC*

**FILER'S ATTESTATION**

I, Mallory A. Barr, am the ECF user whose identification and password are being used to file this Joint Statement Re: Continued Need For Discovery Stay on behalf of Relator STF, LLC and Defendants Vibrant America, LLC.  In compliance with L.R. 5-1(i)(3), I hereby attest that concurrence in the filing of this Joint Stipulation has been obtained from each of the other signatories.

Dated: July 10, 2020                               By:  */s/ Mallory A. Barr*